**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy (#134180)
Michael Goldberg (#188669)
Robert V. Prongay (#270796)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorneys for Plaintiff*
[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOANN N. MARTINELLI, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MARRONE BIO INNOVATIONS, INC., PAMELA G. MARRONE, DONALD J. GLIDEWELL, and JAMES B. BOYD, <br><br> Defendants. | Case No.: <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff JoAnn N. Martinelli ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against defendants, alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Marrone Bio Innovations, Inc. ("Marrone" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants (defined below) who purchased or otherwise acquired Marrone securities between March 6, 2014 and September 2, 2014, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder against the Company and certain of its top officials.

2. Marrone makes bio-based pest management and plant health products. Bio-based products are comprised of naturally occurring microorganisms, such as bacteria and fungi, and plant extracts. The Company targets the major markets that use conventional chemical pesticides, including certain agricultural and water markets, where the bio-based products are used as substitutes for, or in connection with, conventional chemical pesticides. Marrone also targets new markets for which there are no available conventional chemical pesticides, the use of conventional chemical products may not

CLASS ACTION COMPLAINT
1

Plaintiff JoAnn N. Martinelli ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against defendants, alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Marrone Bio Innovations, Inc. ("Marrone" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants (defined below) who purchased or otherwise acquired Marrone securities between March 6, 2014 and September 2, 2014, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder against the Company and certain of its top officials.

2. Marrone makes bio-based pest management and plant health products. Bio-based products are comprised of naturally occurring microorganisms, such as bacteria and fungi, and plant extracts. The Company targets the major markets that use conventional chemical pesticides, including certain agricultural and water markets, where the bio-based products are used as substitutes for, or in connection with, conventional chemical pesticides. Marrone also targets new markets for which there are no available conventional chemical pesticides, the use of conventional chemical products may not

be desirable or permissible because of health and environmental concerns or the development of pest resistance has reduced the efficacy of conventional chemical pesticides.

3. Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Marrone's financial statements contained errors related to the improper recognition of revenues; (2) the Company lacked adequate internal controls over financial reporting; and (3) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

4. On September 3, 2014, the Company filed a Form 8-K with the SEC, announcing, among other things, that some of its previously issued financial statements should no longer be relied upon as being in compliance with generally accepted accounting principles. In the Form 8-K, the Company stated, in part:

> On September 3, 2014, we issued a press release announcing that our board's Audit Committee has commenced an internal investigation after learning of documents calling into question the recognition of revenue in the fourth quarter of 2013 for an $870,000 transaction. On September 2, 2014 the Audit Committee concluded, after consultation with management, that our previously reported financial statements as of December 31, 2013 and for the fiscal year ended December 31, 2013 included in the Company's Annual Report on Form 10-K for the year ended December 31, 2013, the related report of the independent auditors on those 2013 financial statements dated March 25, 2014, and the unaudited interim financial statements included in the Company's Quarterly Reports on Forms 10-Q for the quarters ended March 31, 2014 and June 30, 2014, should no longer be relied upon.
>
> The Audit Committee of the Board of Directors of the Company and Company management have discussed the foregoing matters with the Company's independent registered public accounting firm, Ernst & Young LLP.

5. On this news, the Company's shares fell $2.50, or over 44%, to close at $3.15 on September 3, 2014.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

9. Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as the Company maintains corporate offices in this District.

10. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

11. Plaintiff, as set forth in the attached Certification, acquired Marrone securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

12. Defendant Marrone Bio Innovations, Inc. provides bio-based pest management and plant health products for the crop protection, water treatment, and other target markets in the United States and internationally. Marrone is headquartered in Davis, California and trades on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "MBII."

13. Defendant Pamela G. Marrone ("P. Marrone") has served as the Company's Chief Executive Officer and President at all relevant times.

14. Defendant Donald J. Glidewell ("Glidewell") served as the Company's Chief Financial Officer. Pursuant to the terms of the transition agreement that the Company entered into with Glidewell on November 7, 2012, Glidewell resigned as the Company's Chief Financial Officer effective as of March 25, 2014.

15. Defendant James B. Boyd ("Boyd") had been serving jointly with Glidewell as Chief Financial Officer during the transition period, and assumed sole responsibility for that role on March 25, 2014.

16. The defendants referenced above in ¶¶ 13 – 15 are sometimes referred to herein as the "Individual Defendants."

17. Defendant Marrone and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18. Marrone makes bio-based pest management and plant health products. The Company's headquarters are located in Davis, CA.

### Materially False And Misleading Statements Issued During the Class Period

19. On March 6, 2014, the first day of the Class Period, the Company issued a press release announcing results for the fourth quarter and fiscal year ended December 31, 2013. For the quarter, Marrone reported revenues of $6 million, representing growth of 106%. Revenue for the full year 2013 totaled $14.5 million, representing growth of 104%. The March 6, 2014 press release contained additional statements from defendants pertaining to the Company's fourth quarter and fiscal 2013 performance, including in relevant part:

"Our robust fourth quarter results capped a transformative year for Marrone Bio Innovations," said Pam Marrone, Chief Executive Officer of Marrone Bio Innovations. "I am extremely pleased with the progress we have achieved in 2013. We continued to broaden our sales into high value specialty crops, launched into row crops in North America and also extended our commercial reach across the globe. Our commercial success in the fourth quarter as well as our numerous scientific and operational milestones in 2013 underscore our confidence that we will continue to lead the shift to biologically-based alternatives for pest management and plant health."

20.     On March 25, 2014, the Company filed an annual report Form 10-K with the SEC which was signed by defendants P. Marrone and Glidewell, and reiterated the Company's previously announced quarterly and annual financial results and financial position. In addition, the Form 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by defendants P. Marrone and Glidewell, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

21.     Moreover, the 2013 Form 10-K contained the following materially false and/or misleading language pertaining to the Company's revenue recognition policies:

*Revenue Recognition*

The Company recognizes revenues when persuasive evidence of an arrangement exists, delivery and transfer of title has occurred or services have been rendered, the price is fixed or determinable, and collectability is reasonably assured, unless contractual obligations, acceptance provisions or other contingencies exist. If such obligations or provisions exist, revenue is recognized after such obligations or provisions are fulfilled or expire.

22.     On May 13, 2014, the Company issued a press release announcing results for the first quarter ended March 31, 2013. Marrone reported revenues for the first quarter 2014 of $2.8 million, compared to $2.7 million for the first quarter of 2013, in-line with the Company's expectations.

23.     On May 15, 2014, the Company filed a Form 10-Q with the SEC which was signed by defendant Boyd, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed SOX certifications by defendants P.

Marrone and Boyd, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24. Moreover, the first quarter Form 10-Q contained the following materially false and/or misleading language pertaining to the Company's revenue recognition policies:

*Revenue Recognition*

The Company recognizes revenues when persuasive evidence of an arrangement exists, delivery and transfer of title has occurred or services have been rendered, the price is fixed or determinable, and collectability is reasonably assured, unless contractual obligations, acceptance provisions or other contingencies exist. If such obligations or provisions exist, revenue is recognized after such obligations or provisions are fulfilled or expire.

25. On August 7, 2014, the Company issued a press release announcing results for the second quarter ended June 30, 2014. Marrone reported revenues for the second quarter of $3.6 million, compared to $4.5 million in the second quarter of 2013.

26. On August 13, 2014, the Company filed a Form 10-Q with the SEC which was signed by defendant Boyd, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed SOX certifications by defendants P. Marrone and Boyd, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27. Moreover, the first quarter Form 10-Q contained the following materially false and/or misleading language pertaining to the Company's revenue recognition policies:

*Revenue Recognition*

The Company recognizes revenues when persuasive evidence of an arrangement exists, delivery and transfer of title has occurred or services have been rendered, the price is fixed or determinable, and collectability is reasonably assured, unless contractual obligations, acceptance provisions or other contingencies exist. If such obligations or provisions exist, revenue is recognized after such obligations or provisions are fulfilled or expire.

28. The statements referenced in ¶¶ 19 – 27 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Marrone's financial statements contained errors related to the improper recognition of revenues; (2) the Company lacked adequate internal controls over financial reporting; and (3) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

## The Truth Emerges

29. On September 3, 2014, the Company issued a press release and filed a Form 8-K with the SEC announcing that certain of its previously issued financial statements should no longer be relied upon as being in compliance with generally accepted accounting principles. In the Form 8-K, the Company stated, in part:

> **Item 4.02. Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review**.
>
> On September 3, 2014, we issued a press release announcing that our board's Audit Committee has commenced an internal investigation after learning of documents calling into question the recognition of revenue in the fourth quarter of 2013 for an $870,000 transaction. On September 2, 2014 the Audit Committee concluded, after consultation with management, that our previously reported financial statements as of December 31, 2013 and for the fiscal year ended December 31, 2013 included in the Company's Annual Report on Form 10-K for the year ended December 31, 2013, the related report of the independent auditors on those 2013 financial statements dated March 25, 2014, and the unaudited interim financial statements included in the Company's Quarterly Reports on Forms 10-Q for the quarters ended March 31, 2014 and June 30, 2014, should no longer be relied upon.
>
> The Audit Committee of the Board of Directors of the Company and Company management have discussed the foregoing matters with the Company's independent registered public accounting firm, Ernst & Young LLP.

30. On this news, the Company's shares fell $2.50, or over 44%, to close at $3.15 on September 3, 2014.

31.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Marrone securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

33.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Marrone securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Marrone or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

34.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

35.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

36. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Marrone;

- whether the Individual Defendants caused Marrone to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Marrone securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

37. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

38. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Marrone securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Marrone securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

39. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

40. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violations of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

41. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

43. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive

the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Marrone securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Marrone securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

44. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Marrone securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Marrone's finances and business prospects.

45. By virtue of their positions at Marrone, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

46. Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Marrone securities from their personal portfolios.

47.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Marrone, the Individual Defendants had knowledge of the details of Marrone's internal affairs.

48.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Marrone.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Marrone's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Marrone securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Marrone's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Marrone securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

49.     During the Class Period, Marrone securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Marrone securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Marrone securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market

price of Marrone securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

50. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

51. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violations of Section 20(a) of The Exchange Act
### Against The Individual Defendants

52. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53. During the Class Period, the Individual Defendants participated in the operation and management of Marrone, and conducted and participated, directly and indirectly, in the conduct of Marrone's business affairs. Because of their senior positions, they knew the adverse non-public information about Marrone's current financial position and future business prospects.

54. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Marrone's business practices, and to correct promptly any public statements issued by Marrone which had become materially false or misleading.

55. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Marrone disseminated in the marketplace during the Class Period concerning the Company's business, operational and accounting policies. Throughout the Class Period, the Individual

Defendants exercised their power and authority to cause Marrone to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Marrone within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Marrone securities.

56. Each of the Individual Defendants, therefore, acted as a controlling person of Marrone. By reason of their senior management positions and/or being directors of Marrone, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Marrone to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Marrone and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

57. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Marrone.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demand judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as her reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: September 5, 2014              Respectfully submitted,

**GLANCY BINKOW & GOLDBERG LLP**

By: *s/ Lionel Z. Glancy*
Lionel Z. Glancy
Michael Goldberg
Robert V. Prongay
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**POMERANTZ LLP**
Jeremy A. Lieberman
Francis P. McConville
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile:  (212) 661-8665

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Edward N. Gewirtz
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone (212) 697-6484
Facsimile (212) 697-7296
Email: chona@bgandg.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1. I, JoAnn Martinelli, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Marrone Bio Innovations, Inc. ("Marrone Bio" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Marrone Bio securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Marron Bio securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Marron Bio securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed _September 4, 2014_
(Date)

_JoAnn Nielsen Martinelli_
(Signature)

JoAnn Nielsen Martinelli
(Type or Print Name)

**Marrone Bio Innovations, Inc. (MBII)**                **Martinelli, Joann**

## LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|---|---|---|---|
| 05/19/2014 | PUR | 400 | $8.4200 |

martinelli